1  **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                  **FOR THE DISTRICT OF ARIZONA**

8

9   United States of America,              No. CR-21-00888-001-PHX-GMS

10                    Plaintiff,            **ORDER**

11  v.

12  Luis Alonso Sam-Pena,

13                    Defendant.

14

15

16        Before the Court is Luis Alonso Sam-Pena's ("Defendant") Motion to Dismiss

17  Indictment Pursuant to 8 U.S.C. § 1326(d) (Doc. 44).  For the following reasons, the

18  Defendant's motion is granted.

19                            **BACKGROUND**

20        The Defendant is a Mexican national who pled guilty to kidnapping in Arizona in

21  2009.  (Doc. 44 at 3); Ariz. Rev. Stat. § 13-1304.  He was sentenced to a term of five years

22  in the custody of the Arizona Department of Corrections ("ADC") on June 16, 2009.  (Doc.

23  68-3 (under seal) at 2.)  During his term of custody, Immigration and Customs Enforcement

24  ("ICE") began removal proceedings against him.   ICE determined his kidnapping

25  conviction was an aggravated felony under the Immigration and Nationality Act ("INA"),

26  and Officer Frances Garcia ("Officer Garcia") served the Defendant with a Notice of Intent

27  to Issue a Final Administrative Removal Order ("Form I-851") on June 23, 2009.  (Doc.

28  44-2 at 3.)  According to the Defendant's Form I-851, Officer Garcia "explained and/or

served" the contents of the form to him in Spanish.  (Doc. 44-2 at 3.)

Among other provisions, Form I-851 advised the Defendant that he had a right to counsel and a right to seek judicial review of the removal order within thirty days.  (Doc. 44-2 at 2.)  The Defendant marked on Form I-851 that he did not wish to contest his removability and that he waived his rights to judicial review.  (Doc. 44-2 at 3.)  But the Defendant was not promptly removed due to his ongoing state incarceration.  His Form I-851 was modified on April 20, 2011, when the name of the initial issuing officer was scratched out, and a new issuing officer, Darrell Woods, signed the Form I-851 anew in blue ink.  (Doc. 44-2 at 2.)  Days later, on April 26, 2011, ICE issued a Final Administrative Removal Order compelling the Defendant's removal to Mexico.  (Doc. 44-3 at 2.)  The Defendant was not served with his Final Administrative Removal Order until January 30, 2013, the date of his removal.  (Doc. 44-3 at 2); (Doc. 44-4 at 3.)

The Defendant subsequently reentered the United States and was charged with Reentry of Removed Alien in violation of 8 U.S.C. § 1326(a) and (b)(1) in 2021.  (Doc 26 at 1.)  In the present motion, he collaterally attacks the validity of his 2013 removal and seeks dismissal of the indictment.  (Doc. 44.)  To resolve disputed factual issues, the Court held an evidentiary hearing on April 29, 2022.

## DISCUSSION

### I.      Legal Standard

Under 8 U.S.C. § 1326, a defendant charged with illegal reentry after removal may collaterally attack the removal order.  8 U.S.C. § 1326(d); *United States v. Mendoza-Lopez*, 481 U.S. 828, 837–38 (1987); *United States v. Raya-Vaca*, 771 F.3d 1195, 1201 (9th Cir. 2014), *abrogated on other grounds by Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959 (2020).  Section 1326(d) "authorizes collateral attack on three conditions: (1) that the defendant exhausted available administrative remedies; (2) that the removal proceedings 'deprived the alien of the opportunity for judicial review'; and (3) that the removal order 'was fundamentally unfair.'"  *United States v. Garcia-Santana*, 774 F.3d 528, 532 (9th Cir. 2014) (quoting 8 U.S.C. § 1326(d)), *abrogated on other grounds as*

1    *recognized in Ho Sang Yim v. Barr*, 972 F.3d 1069, 1078 n.2 (9th Cir. 2020).  The Supreme
2    Court has recently clarified that defendants must "meet all three" conditions in order to
3    challenge their underlying removal orders.  *United States v. Palomar-Santiago*, 141 S. Ct.
4    1615, 1621 (2021).  A defendant can establish that a removal order was fundamentally
5    unfair by showing that (1) the defendant's due process rights were violated due to defects
6    in the underlying deportation proceeding, and (2) the defendant suffered prejudice because
7    of the defects.  *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004);
8    *see also United States v. Zarate-Martinez*, 133 F.3d 1194, 1197 (9th Cir. 1998), *overruled
9    on other grounds as recognized in United States v. Ballesteros–Ruiz*, 319 F.3d 1101, 1105
10   (9th Cir. 2003).

11   **II.    Analysis**

12        **A.    *Palomar-Santiago***

13        In *Palomar-Santiago*, the Supreme Court struck down a Ninth Circuit rule that
14   excused defendants "'from proving the first two requirements' of § 1326(d) if they were
15   'not convicted of an offense that made [them] removable.'"  *Palomar-Santiago*, 141 S. Ct.
16   at 1620 (quoting *United States v. Ochoa*, 861 F.3d 1010, 1015 (9th Cir. 2017)).  This rule
17   came from a line of cases holding that § 1326(d)(1) and (d)(2) were satisfied when the basis
18   for a noncitizen's removal was an incorrect determination that they had committed an
19   aggravated felony, and no immigration official informed the noncitizen that they were
20   eligible for relief.  *See United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1130–31 (9th
21   Cir. 2013) (collecting cases).  Because a noncitizen who is unaware of their eligibility for
22   relief "has had no 'meaningful opportunity to appeal' the removal," the cases held that no
23   administrative and judicial review was available to them.  *Id.*

24        The defendant in *Palomar-Santiago* had been removed following a conviction for
25   felony DUI.  *Palomar-Santiago*, 141 S. Ct. at 1620.  At the time, the immigration judge
26   considered felony DUI to be a crime of violence, and therefore an aggravated felony.  *Id.*
27   The Supreme Court subsequently held that DUI crimes did not qualify as crimes of
28   violence.  *Id.*; *see Leocal v. Ashcroft*, 543 U.S. 1 (2004).  So, when the defendant faced

charges under § 1326, the district court and Ninth Circuit dismissed his indictment under *Ochoa* because the defendant was not informed that he was eligible for relief.[1]  *See United States v. Palomar-Santiago*, 813 F. App'x 282, 284 (9th Cir. 2020).  Because the defendant had shown he was not advised of his eligibility for relief, he was not aware of his right to appeal and therefore was excused from establishing the first two requirements under § 1326(d).  *Id.*  The Supreme Court reversed.  *Palomar-Santiago*, 141 S. Ct. at 1620.  Because § 1326(d) framed its requirements using the conjunctive "and," the defendant needed to establish all three requirements to be eligible for relief.  *Id.* at 1621.  The Ninth Circuit's application of *Ochoa* contravened the statute because it excused compliance with the statute's twin procedural requirements due to an error in the removal proceeding that could have been addressed in further administrative or judicial review.  *Id.*  Because "the substantive validity of the removal order is quite distinct from whether the noncitizen exhausted his administrative remedies . . . or was deprived of the opportunity for judicial review," the defendant was still required to show all three prongs under the statute.  *Id.* at 1620–21.

While the Ninth Circuit has on several occasions expressed doubt about "the continued vitality" of judge-made rules excusing a defendant from establishing each element of § 1326(d), it has not had occasion to squarely address *Palomar-Santiago*'s impact on its prior jurisprudence.  *See Zamorano v. Garland*, 2 F.4th 1213, 1225 (9th Cir. 2021); *United States v. Castellanos-Avalos*, 22 F.4th 1142, 1146 (9th Cir. 2022); *Alam v. Garland*, 11 F.4th 1133, 1137–38 (9th Cir. 2021) (en banc) (Bennett, J., concurring); *United States v. Bastide-Hernandez*, 3 F.4th 1193, 1197 (9th Cir. 2021), *reh'g en banc granted, opinion vacated by* 20 F.4th 1230 (9th Cir. 2021).

## B.   Administrative Remedies

The Defendant argues he satisfies § 1326(d)(1) because he had no available administrative remedies where he could contest the immigration officer's determination

---

[1] Determinations that a certain statutory crime is not an aggravated felony apply with retroactive effect for purposes of § 1326(d) motions.  *See United States v. Aguilera-Rios*, 769 F.3d 626, 633 (9th Cir. 2014).

that his prior conviction was an aggravated felony.  (Doc. 44 at 10.)  The Defendant was removed pursuant to 8 U.S.C. § 1228(b), which provides expedited administrative processes to remove individuals who have been convicted of aggravated felonies.  *See also* 8 C.F.R. § 238.1 (setting forth procedures for administrative removals pursuant to § 1228(b)).[2]  The Defendant's Form I-851 indicates the immigration officer determined his kidnapping conviction was an aggravated felony because it was a crime of violence.  (Doc. 44-2 at 4); 8 U.S.C. § 1101(a)(43)(F).  The Defendant claims this was in error, as *United States v. Marquez-Lobos* establishes that Ariz. Rev. Stat. § 13-1304 does not contain the requisite "element of physical force."[3]  697 F.3d 759, 764 (9th Cir. 2012).

The Defendant's Form I-851 informed him that there are several enumerated grounds upon which he can contest his order of deportation.  The form presented him with three potential grounds: (1) that he is a "citizen or national of the United States," (2) that he is "a lawful permanent resident of the United States," and (3) that he "was not convicted of the criminal offense described" in the form.  (Doc. 44-2 at 3.)  But it did not explicitly

---

[2] The Immigration and Nationality Act ("INA") sets forth which crimes are eligible to be considered aggravated felonies for removal purposes.  *See* 8 U.S.C. § 1101(a)(43).  Relevant to this case, crimes of violence as defined in 18 U.S.C. § 16 are aggravated felonies under the INA.  8 U.S.C. § 1101(a)(43)(F).

[3] Ariz. Rev. Stat. § 13-1304(A) provides that:

> A person commits kidnapping by knowingly restraining another person with the intent to:
>
> 1. Hold the victim for ransom, as a shield or hostage; or
>
> 2. Hold the victim for involuntary servitude; or
>
> 3. Inflict death, physical injury or a sexual offense on the victim, or to otherwise aid in the commission of a felony; or
>
> 4. Place the victim or a third person in reasonable apprehension of imminent physical injury to the victim or the third person; or
>
> 5. Interfere with the performance of a governmental or political function; or
>
> 6. Seize or exercise control over any airplane, train, bus, ship or other vehicle.

1   inform him that he could "refute . . . the legal conclusion underlying his removability," and

2   its design suggests "removability could only be contested on factual grounds." *United*

3   *States v. Valdivia-Flores*, 876 F.3d 1201, 1205–06 (2017).   Moreover, the Defendant has

4   attached administrative guidance documents that suggest any administrative review of a

5   contested Form I-851 is "limited to factual matters," a contention the government does not

6   rebut.  (Doc. 44-5 at 23.)   Therefore, to the extent the Defendant would have wanted to

7   challenge the legal basis for his removal, no administrative remedies were available to him.

8   ### C.   Judicial Review

9          On his Form I-851, the Defendant appears to have waived his right to pursue judicial

10  review of the immigration officer's determination that he was an aggravated felon.[4]  (Doc.

11  44-2 at 3.)   The Defendant, however, argues his waiver of judicial review was not

12  considered and intelligent because there is not clear and convincing evidence that Form

13  I-851 was explained to him in Spanish, and no other sufficiently clear and convincing

14  evidence that he knowingly waived his right to appeal.[5]  (Doc. 44 at 12.)

15  [4] The Defendant's waiver reads as follows:

16          I admit the allegations and charge in this Notice of Intent.  I
            admit that I am deportable and acknowledge that I am not
17          eligible for any form of relief from removal.  I waive my right
            to rebut and contest the above charges.  I do not wish to request
18          withholding or deferral of removal.  I wish to be removed to
            Mexico.
19
            I understand that I have the right to remain in the United States
20          for 14 calendar days in order to apply for judicial review.  I do
            not wish this opportunity.  I waive this right.
21

22  (Doc. 44-2 at 3.)

23  [5] To the extent the Defendant's argument implicates the pre-*Palomar-Santiago* caselaw on
    waiver in the Ninth Circuit, their holdings are not clearly irreconcilable with *Palomar-*
24  *Santiago* in this context.  *See, e.g.*, *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1044
    (9th Cir. 2012).  As discussed above, *Palomar-Santiago* held that in § 1326(d) proceedings,
25  a federal court's disagreement with an immigration judge on the merits—whether the prior
    conviction was an aggravated felony—could not excuse a defendant's noncompliance with
26  administrative and judicial exhaustion requirements.  141 S. Ct. at 1621; *see also Ochoa*,
    861 F.3d at 1022 (Graber, J., concurring) (noting that the use of a merits disagreement to
27  excuse compliance with § 1326(d)'s procedural requirements amounted to an exercise of
    plenary review over the immigration proceeding even though § 1326(d)(1) and (2) were
    "designed to require that merits arguments be presented to the [immigration judge] and
28  argued on appeal in the first instance").  *Palomar-Santiago* did not address whether a
    failure to translate the administrative proceedings into a language the noncitizen

"The government bears the burden of proving valid waiver," *United States v. Ramos*, 623 F.3d 672, 680 (9th Cir. 2010), and must do so by clear and convincing evidence.  *United States v. Pallares-Galan*, 359 F.3d 1088, 1097 (9th Cir. 2004).  A reviewing court must "indulge every reasonable presumption against waiver," *Ramos*, 623 F.3d at 680 (quoting *United States v. Lopez-Vasquez*, 1 F.3d 751, 753 (9th Cir. 1993)), and "evaluate the surrounding circumstances" to determine whether the defendant's waiver was considered and intelligent.  *Valdivia-Flores*, 876 F.3d at 1205.

The Ninth Circuit has repeatedly emphasized the importance of competent translation to the question of whether an individual in immigration removal proceedings made a considered and intelligent waiver of their right to appeal.  *See, e.g.*, *Ramos*, 623 F.3d at 677, 680 (finding government failed to show Spanish-speaking defendant understood the consequences of his waiver when immigration officer only spoke limited Spanish and testified as to her "feeling" that the defendant understood her, even though the form governing his removal proceedings and waiver was written in both English and Spanish); *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1044 (9th Cir. 2012) (finding no considered and intelligent waiver when the defendant testified that he did not read English and that his deportation officer did not explain the contents of the Notice of Intent to him, and the government relied on notation that officer "explained and/or served" its contents in Spanish without adducing evidence as to officer's ability to communicate in Spanish); *United States v. Gomez*, 757 F.3d 885, 896 (9th Cir. 2014) (finding no considered and intelligent waiver when the defendant—removed using the same form as in *Ramos*— claimed to have difficulty reading Spanish, that he did not understand the purpose of the proceedings, and that the immigration officer did not individually review the form with him, when the government's only evidence that he received a competent translation was the defendant's signature on the form in question).  When an uncounseled defendant does

---

understood—a procedural defect—could render judicial review unavailable.  *See also Mendoza-Lopez*, 481 U.S. at 838 ("[W]here defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense.").

not speak English, a competent translation goes directly to assuring that the defendant understands their rights when deciding whether to waive their right to further administrative and judicial review. *See Gomez*, 757 F.3d at 896.

Essentially, in this case, the government offers three reasons to conclude that the Defendant engaged in a considered and intelligent waiver. First it introduces Form I-851 from the Defendant's A-file in which the Defendant waives his right to appeal. The form indicates that it was served on the Defendant by Officer Garcia, who "explained and/or served" the contents of the form to him in Spanish. (Doc. 44-2 at 3.) Second, the government offers evidence that Officer Garcia, who was responsible for transmitting the form to the Defendant, was a fluent Spanish speaker. Third, it offers evidence that both as a matter of training and standard procedure a 287(g) officer, like Officer Garcia, would explain Form I-851 to persons upon whom they served it.

As for Form I-851 itself, as an initial matter, the "introduction of an official document signed by the defendant waiving his right to appeal is insufficient to meet the government's burden of proving a valid waiver." *Gomez*, 757 F.3d at 895. This is true even when the document states that an immigration officer "explained and/or served" the document on the Defendant in Spanish. *Reyes-Bonilla*, 671 F.3d at 1044. In *Reyes-Bonilla*, the defendant was in an administrative removal proceeding under 8 U.S.C. § 1228(b) and argued he did not make a considered and intelligent waiver of his right to appeal on a Notice of Intent to Issue a Final Administrative Removal Order ("Notice of Intent") containing similar provisions as the Form I-851 in this case. *Id.* at 1040. The defendant claimed his written waiver was insufficient because he could not read English, and the immigration officer did not advise him of his rights or the scope of the waiver in Spanish. *Id.* at 1044. The government relied on the Notice of Intent itself, which indicated that the immigration officer "explained and/or served" it to the defendant in Spanish. *Id.* The Ninth Circuit held this language was not enough, standing alone, to show a valid waiver because the statement on its face would be true if the document was only served on the defendant in Spanish. *Id.* Because the government did not offer any evidence "as to the

1    extent of the explanation given or [the immigration officer]'s ability to communicate in

2    Spanish," it did not meet its burden to show a valid waiver.[6]  *Id.* at 1045.

3            In this case, the government also offered evidence, however, that Officer Garcia was

4    what is colloquially known as a 287(g) officer.[7]   287(g) officers are state corrections

5    officers authorized to place individuals in removal proceedings by virtue of ADC's

6    agreement with ICE under § 287(g) of the INA.  *See* 8 U.S.C. § 1357(g); *Arizona v. United*

7    *States*, 567 U.S. 387, 408–09 (2012) (identifying the 287(g) program as one of the "limited

8    circumstances in which state officers may perform the functions of an immigration

9    officer").  According to Robert Campbell, a retired ICE officer who supervised the 287(g)

10   program in Arizona from 2010 through 2019, ADC required its 287(g) officers to speak

11   fluent Spanish.  Mr. Campbell further testified that ADC's 287(g) officers were trained by

12   ICE to conduct removal proceedings.  If the individual subject to removal spoke Spanish,

13   the 287(g) officers were trained to translate all forms into Spanish and explain their

14   contents.

15           While the government's evidence makes this a closer case than *Reyes-Bonilla*, it

16   does not establish by clear and convincing evidence that the Defendant's waiver of his right

17   to judicial review was considered and intelligent.  Assuming for purposes of this order—

18   as the Defendant did—that Officer Garcia is fluent in Spanish, her ability to speak Spanish

19   is mildly probative.  Evidence of her linguistic abilities goes to show that she could have

20   explained Form I-851 to the Defendant in Spanish, but not that she necessarily did so.  That

21   she, like all 287(g) officers, was trained to translate forms into Spanish and to explain their

22   contents, is more probative, but still insufficient.  The training she and others received

23   illustrates what 287(g) officers were instructed to do, and maybe even what they likely did

---

24   [6] The government notes that the Defendant also signed a separate document also dated June
25   23, 2009, where he avers in Spanish that he had been properly served with "copies of
     documents relating to ICE's institution of proceedings to remove you from the United
26   States."  (Doc. 68-4 (sealed) at 1.)  Yet establishing that the Defendant averred in Spanish
     that he had been properly served with "copies of documents relating to ICE's institution of
27   proceedings to remove you" does not indicate that he received an explanation in Spanish
     of the waiver provisions contained in Form I-851.

28   [7] The government was unable to locate Officer Garcia, and she did not testify at the
     evidentiary hearing.

in most proceedings, but does not show clearly and convincingly that she followed her training in this particular proceeding.  The government has offered no testimony by witnesses with personal knowledge of either the circumstances of the Defendant's removal proceeding or Officer Garcia's standard practices in conducting these proceedings.  *See United States v. Valverde-Rumbo*, No. 14-cr-00620-RMW, 2015 WL 6507090, at *3–4, *3 n.2 (N.D. Cal. Oct. 28, 2015).

In weighing the evidence presented by the government against the Defendant's declaration, *United States v. Aguilar-Moya* is instructive.  *See United States v. Aguilar-Moya*, No. 17-cr-00015-BLF, 2018 WL 3659304, at *5 (N.D. Cal. Aug. 2, 2018).  There, the court found the government failed to meet its burden to show the defendant's written waiver on Form I-851 was considered and intelligent.  *Id.*  The government, like here, did not present testimony from the immigration officer who reviewed the Form I-851 with the defendant.  *Id.* at *3.  Instead, a supervising officer testified that (1) the immigration officer who reviewed the defendant's Form I-851 was a fluent Spanish speaker, and (2) "it was standard practice for ICE Officers to explain the I-851 form in a language the alien can understand—here, Spanish." *Id.* at *3, 5.  Because the government did not present evidence by any witness with personal knowledge of the defendant's specific removal proceeding, they did "not rebut [the defendant]'s assertions about the specific circumstances of her case." *Id.* at *5.  Therefore, the government did not show by clear and convincing evidence that the defendant's waiver of rights was considered and intelligent.  *Id.* So too here.  The government's evidence establishes that 287(g) officers were trained to review immigration documents with individuals in removal proceedings in a language the individual could understand, and that Officer Garcia was a fluent Spanish speaker.  This evidence, however, does not rebut the Defendant's allegations that Officer Garcia did not follow her training in his "specific circumstances." *Id.*; (Doc. 44-1 at 3.)  As a result, the government has not shown that Officer Garcia explained the contents of Form I-851 or the consequences of waiver in Spanish to the Defendant.  It has therefore not met its burden to show that the Defendant understood his rights, and that his waiver of his right to judicial review was

considered and intelligent.  *See Reyes-Bonilla*, 671 F.3d at 1044; *Ramos*, 623 F.3d at 680. Absent such a showing, the Court must conclude that the Defendant was "improperly deprived . . . of the opportunity for judicial review."  8 U.S.C. § 1326(d)(2).

### D.    Fundamental Unfairness

The Defendant argues his prior administrative removal was fundamentally unfair because his underlying conviction under Ariz. Rev. Stat § 13-1304 was not an aggravated felony.  (Doc. 44 at 6.)  The government concedes that the Defendant's conviction under Ariz. Rev. Stat. § 13-1304 does not qualify as an aggravated felony under the INA. (Doc. 68 (sealed) at 9 n.1.)  As the Defendant had not committed an aggravated felony, he was ineligible for removal through the expedited administrative process.  This satisfies § 1326(d)(3):

> Where a prior removal order is premised on the commission of an aggravated felony, a defendant who shows that the crime of which he was previously convicted was not, in fact, an aggravated felony, has established both that his due process rights were violated and that he suffered prejudice as a result.

*United States v. Martinez*, 786 F.3d 1227, 1230 (9th Cir. 2015).

### CONCLUSION

The Defendant has shown that he exhausted all available administrative remedies, that he was improperly deprived of judicial review, and that his removal was fundamentally unfair.  As a result, he satisfies 8 U.S.C. § 1326(d) and the indictment must be dismissed.

**IT IS THEREFORE ORDERED** that the Defendant's Motion to Dismiss Indictment Pursuant to 8 U.S.C. § 1326(d) (Doc. 44) is **GRANTED.**

**IT IS FURTHER ORDERED** that to the extent the government's Motion to Seal (Doc. 59) remains outstanding, it is **DENIED.**

**IT IS FURTHER ORDERED** directing the Clerk of Court to terminate this action.

**IT IS FURTHER ORDERED** that in light of the dismissal of this case, directing the Clerk of Court to term the pending Motions (Docs. 46, 52, and 55) as moot.

/ / /

1      **IT IS FURTHER ORDERED** that Defendant shall be released from custody as to

2  this case only.

3      Dated this 5th day of May, 2022.

G. Murray Snow
Chief United States District Judge